## JAMES E. BARNARD *vs.* CHARLES H. CROSBY.

Certified office copies of mortgages of personal property may be introduced in evidence by one who is not the grantee therein, if there is no reason to presume that the originals are in his custody or power.

A mortgage of the right to redeem personal property which is already subject to a mortgage for more than its value, if given within six months before going into insolvency, to secure a preëxisting debt, by a person who is not able to meet his engagements in the ordinary course of business, and knows that he is not, but has the intention and expectation of paying the first mortgage and all other debts at some future time, will avoid a discharge in insolvency.

One who has signed an assent to the granting of a certificate of discharge in insolvency and a release of his claim proved against the insolvent estate, may avoid the effect thereof by proving that he was induced to sign the same by the false and fraudulent representations of the debtor that it would be for his interest to do so, and that the assignees or creditors were intending to seek to hold him as a partner with the debtor, and thus injuriously to affect his interests.

If an assent to the granting of a certificate of discharge to an insolvent debtor and a release of a claim against him are contained in a single instrument, proof that the signature to it as an assent to the granting of a certificate of discharge was obtained by fraud will avoid the entire instrument.

CONTRACT upon two promissory notes signed " Moore & Crosby," dated November 16, 1855, and amounting together to $7650. Emery N. Moore, one of the original defendants, was defaulted ; and the action was defended by Charles H. Crosby alone, who, among other matters, set up in defence a discharge in insolvency, and also the release contained in the following paper, signed by the plaintiff and other creditors of Moore & Crosby :

" Boston, January 14, 1857.

" Know all men that we the undersigned, severally and respectively creditors of Emery N. Moore and Charles H. Crosby, of said Boston, late copartners and printers under the firm of Moore & Crosby, insolvent debtors, whose claims have been proved and allowed against their estate, hereby release and forever discharge the said Moore & Crosby from all our claims proved as aforesaid. And we also hereby petition the Hon. Isaac Ames, Esquire, commissioner of insolvency before whom the case of said debtors is now pending, to grant a certificate of discharge to said debtors. In witness whereof we have hereto set our hands and affixed a common seal the date above written."

The plaintiff filed a replication setting forth various matters in avoidance of the discharge in insolvency, and amongst others that he was a creditor of Moore & Crosby for the amount of the notes in suit, for which he held a mortgage of personal property, and that for the purpose of inducing him to discharge his said mortgage and prove his notes and assent to the discharge of said Crosby, the latter falsely and fraudulently represented to him that the creditors of Moore & Crosby intended to invalidate the mortgage by showing that the plaintiff was a partner in the firm of Moore & Crosby, and that there was a probability of their success, and that the plaintiff's best course for his own interest was to discharge his mortgage, prove his claims, and assent to their discharge, which he, being induced by the said representations, accordingly did, and that his assent was necessary to secure the requisite majorities to authorize the granting of the certificate of discharge. The replication further set forth that the execution of the release, if proved, was obtained by the false and fraudulent representation that it was merely an assent to the granting of a certificate of discharge in insolvency.

At the trial in this court, before *Hoar*, J., the plaintiff offered in evidence certified office copies of a mortgage of personal property by Moore & Crosby to one Hill, and also of another to Rice, Kendall & Co., the latter having been executed within six months before their insolvency. The defendant objected on the ground that the original should be produced, or its loss accounted for; but the objection was overruled.

Upon the effect of the mortgage to Rice, Kendall & Co. the judge ruled as follows: " If Moore & Crosby were unable to pay their notes and meet their business engagements in the ordinary course of business, and knew that fact, and then made a mortgage of personal property in their possession to a preexisting creditor to secure a preexisting debt, and within six months went into insolvency, a discharge thereupon obtained is invalid, although the property thus mortgaged was subject to previous mortgages to more than its value, and the mortgage was given with the intention to make it effective by a payment of the previous mortgage at some future time, and with the intention

and expectation of paying all their creditors at some future time."

The plaintiff offered evidence tending to prove the facts set forth in the replication, in reference to the representations by which he was induced to sign the assent to the granting of a certificate of discharge in insolvency. The defendant asked the court to instruct the jury that if he made such representations, and even if they were untrue in fact, it would not constitute a fraud in law, and the plaintiff could not avail himself of it. The judge declined thus to rule; and did rule that, " if the defendant fraudulently made the representations, knowing them to be false, and in order to gain a private advantage, and they were the inducement and cause of the plaintiff's signing the release and assent to the discharge, the plaintiff could avail himself of the fraud to avoid the instrument; but that mere untruth in representations would not constitute fraud, nor any general representations of what would be for the plaintiff's interest."

The plaintiff contended at the trial that any evidence tending to show fraud in procuring the plaintiff's signature to the instrument as an assent to a discharge set up in the replication, and relating to representations of a partnership, was competent to avoid the paper as a release, and offered evidence with that view. The defendant asked the court to rule that " so far as the release is concerned, the plaintiff must be held to a proof of the same fraud set forth in his replication; to wit, the representation by Crosby that the paper was merely an assent to his discharge in insolvency." The judge declined so to rule.

The plaintiff contended that the release was in the nature of a composition deed, and offered some evidence tending to show that one of the creditors was induced to sign it by promises of a pecuniary character; the defendant objecting. The defendant asked the court to rule that the release was not in the nature of a composition deed, and is not invalidated by any preferences or advantages to one creditor over another. The judge declined so to rule; but ruled that, if in the nature of a composition deed, it was not invalidated by any preference, upon the facts proved in this case.

Much evidence having been introduced by the plaintiff affecting the validity of the discharge, and the circumstances under which he proved his claim, discharged his mortgage, and signed the paper containing the release and assent to the discharge, and which covered a considerable period of time prior to the signing of the paper last referred to, the defendant asked the court to rule that whatever may have taken place between the parties prior to the signing of the release, if the plaintiff voluntarily and knowingly executed the same, it would bind him; and also that if fraud had been practised by the defendant in procuring the claim to be proved and mortgage released, it would not invalidate the release if the plaintiff executed the same, knowing its contents, and of his own accord; and further, that the plaintiff must show some fraud on the part of the defendant in procuring his signature to the release. The judge adopted these rulings, with the qualification that if the fraudulent representations were the cause and motive of executing the release when it was signed, it would be invalid.

The jury found a verdict for the plaintiff, and the defendant alleged exceptions.

*N. B. Bryant & A. K. P. Joy,* for the defendant.

*D. E. Ware,* for the plaintiff.

CHAPMAN, J. The defendant Crosby sets up in his answer a discharge in insolvency, and a release of the notes in suit, executed by the plaintiff and several other creditors of the defendants. The plaintiff in his replication alleges several fraudulent acts of Crosby in avoidance of the discharge, and among others a mortgage to Rice, Kendall & Co., made within six months prior to the time when Moore & Crosby went into insolvency; and also that the assent of the plaintiff to the discharge in insolvency was obtained by certain fraudulent representations of Crosby; and that the release was obtained by concealment and the fraudulent representation that it was merely an assent to a discharge in insolvency.

1. The first exception to the rulings of the presiding judge which is insisted on at the hearing is to the admission of the certified office copies of two mortgages of personal property

Barnard *v.* Crosby.

made by Moore and Crosby ; one of which was to one Hill, and the other to Rice, Kendall & Co.

It has long been settled that where a party has occasion to offer evidence of a deed of real estate, in which he is not the grantee, or where from its nature it is not presumed to be in his custody or power, a certified office copy is admissible. *Eaton* v. *Campbell*, 7 Pick. 10. *Scanlan* v. *Wright*, 13 Pick. 523. *Ward* v. *Fuller*, 15 Pick. 185. Since the existence of our statutes for the registration of mortgages of personal property, the same rule of evidence has been applied to them. *Pierce* v. *Gray*, 7 Gray, 67.

2. The second exception is to the ruling respecting the effect of the mortgage to Rice, Kendall & Co. If we analyze this ruling, it will be seen that it embraces all that is required by *St.* 1841, *c.* 124, § 3, to invalidate a discharge. It requires the jury to find that Moore & Crosby were unable to pay their notes and meet their business engagements in the ordinary course of business. Such a state of things constitutes insolvency within the statute. *Thompson* v. *Thompson*, 4 Cush. 127. *Lee* v. *Kilburn*, 3 Gray, 594. It also requires them to find that they knew the fact of their insolvency ; that the mortgage was of personal property in their possession, was to secure a preëxisting debt, and was made within six months before their going into insolvency.

But it was further ruled that such a mortgage would invalidate the discharge, although the property thus mortgaged was subject to previous mortgages to more than its value, and the mortgage was given with the intention to make it effective by a payment of the previous mortgage at some future time, and with the intention and expectation of paying all their creditors at some future time. This is the part of the ruling which is specially objected to. The mortgage thus given was a conveyance of Moore & Crosby's right to redeem the mortgaged property ; and if it should rise in value, or if the prior mortgage should be paid, the mortgagee would have the benefit of it. It was none the less a conveyance by them, " intending to give a preference to a preëxisting creditor,' than if its value had been sufficient to give him an ample and immediate security for his

whole debt. The object of the statute was to prohibit this whole class of conveyances, whatever might be the value of the property conveyed. And an intent or expectation of the debtor to pay all his creditors at some future time is very different from an intent to pay them in the ordinary course of business. It is quite consistent with an intent to hinder and delay them for a long period, and has no tendency to relieve a debtor from the consequences of making a mortgage with intent to give an illegal preference to a creditor.

3. The third exception is to the ruling that if the defendant made the representations alleged, namely, that if the plaintiff did not sign the instrument referred to, the assignees, or creditors, or both, were intending to make him out a partner in the firm of Moore & Crosby, and so invalidate his mortgage, and he made them fraudulently, knowing them to be false, and in order to gain a private advantage, and they were the inducement and cause of the plaintiff's signing the release and assent to the discharge, the plaintiff could avail himself of the fraud to avoid the instrument.

It is said that such a representation related to a fact that was not material. But we do not so regard it. It professed to give the plaintiff information that others were about to involve him in litigation, and endeavor to deprive him of his security. Such a proceeding might affect him very materially. And the rule is well settled that where one party induces another to contract with him, by a false and fraudulent representation as to a matter of fact within his own knowledge, or affirmed by him to be within his own knowledge, and materially affecting the interest of the other party, if the latter places confidence in such representation, and is in fact deceived by it, he may avoid the contract. *Hazard* v. *Irwin*, 18 Pick. 95. The principle is applicable as well to an assent of a creditor to the discharge of his debtor in insolvency as to any other contract.

The qualification which was added to this ruling, that mere untruth in representations would not constitute fraud, nor any general representations of what would be for the plaintiff's interest, was all that the utmost caution would seem to require.

4. The defendant relied on a single instrument, which contained both the assent to his discharge in insolvency and the release of debts; and asked the court to rule that, so far as the release was concerned, the plaintiff must be held to a proof of the same fraud set forth in his replication, to wit, the representation by Crosby that the paper was merely an assent to his discharge in insolvency. The court declined so to rule, and this refusal is excepted to.

This exception assumes that the instrument may stand as a release, though it should be avoided as an assent to a discharge, because it was fraudulently obtained. But if the execution of it was procured by fraudulent representations as to any material particular, the whole is tainted by the fraud, and it is entirely void.

The ruling in respect to the instrument as a composition deed was in favor of the defendant; and the further rulings as to the effect of the fraudulent representations contain no new principle, but are substantially embraced in the rulings already considered. *Exceptions overruled.*